## SALTERS a. GENIN.

*New York Superior Court, General Term, July*, 1858.

CAUSE OF ACTION.—VARIANCE.—AMENDMENT.—TRIAL.

The complaint alleged that the plaintiff employed the defendants, who were brokers, to purchase on credit certain stock, and as security on his part for the payment, deposited with them other stocks; that they falsely pretended that they had made the purchase, and he not making payment, pretended to resell the stock, and also sold, or pretended to have sold, the stock which he had deposited, to make up the pretended deficiency.

*Held*, that under this complaint a recovery could not be had by the plaintiff upon proof that the defendants had actually made the purchase, but had afterwards converted to their own use the stock purchased. The variance between the cause of action for a fictitious purchase and sale, and a cause of action for a conversion, is material, and beyond the power of amendment.

A judgment for the plaintiff upon such proof, under the pleadings, would be on the face of the record erroneous and void.

*It seems*, that when on the trial of an action for specific relief, which from the frame of the complaint is properly triable by the court alone without a jury, it appears by the proofs that the only cause of action is one for damages, which would be properly triable by a jury, the court has no power without a consent of the parties waiving a jury, to render a judgment for damages.

Of the effect of an admission as an estoppel.

Appeal from a judgment at special term, in an action tried by the court without a jury.

The facts are fully stated in the opinion of the court.

*C. Tracy* and *Clark & Cornwall*, for the appellants.

*David Dudley Field*, for the respondent.

By the Court.*—Duer, C. J.—This case comes before us upon an appeal from a judgment at special term in favor of the plaintiff for $1756, with interest and costs.

The case was tried by the judge who heard it without a jury, but it does not appear that it was so tried by the consent of the parties.

In order that the conclusions to which we have come may be properly understood, it will be necessary to give a brief statement of the pleadings, and of those portions of the findings and decision of the judge, and of the evidence upon the trial that have a bearing upon the questions upon which alone our decision will turn.

The complaint alleges that upon the 11th day of January, 1856, the plaintiff gave to the defendants, who are partners and stock-brokers, an order to purchase for him two hundred shares of the capital stock of the Accessory Transit Company, and at the same time deposited with them, as a security for his own performance of the contract, thirty-five shares of the stock of the Sixth Avenue Railroad Company, with a power of attorney to transfer the same : that shortly thereafter, the defendants delivered to the plaintiff two memoranda, showing that they had purchased on his account, from different persons, 200 shares of the stock of the Nicaragua Accessory Transit Company, the stock to which his order related, at 25 per cent.; but that no such shares were transferred or delivered to the plaintiff: that subsequently the defendants gave him notice that they should sell the said stock, and thereafter delivered to him a memorandum dated 7th day of April, 1856, showing that they had sold the same, at the price of 13¾ per cent.; but that he, the plaintiff, never transferred or delivered the shares to any person : that on the 11th day of April, 1856, the defendants rendered to the plaintiff an account, of which a copy was annexed, but that no money had been paid to him, nor had the Sixth Avenue Rail-

---

* Present, Duer, C. J., and Woodruff, J.

road stock ever been delivered to him. In the account so rendered by the defendants, the plaintiff was charged with $5000, as the price of the Nicaragua stock, with $87.50 as interest thereon, and $50 for commission, and $150 as a commission for negotiating a loan, the sums total being $5287.50, and he was credited with $2725 as the proceeds of the sale and commission of the Nicaragua Transit Company, and with $2957.50 as proceeds of the sale of the Sixth Avenue Railroad Company. The aggregate being $5682.50, thus leaving and stating $395 as a balance due to the plaintiff.

The complaint then averred that the purchases and sales of the Nicaragua stock in the account rendered were not real but fictitious, and that the commission thereon charged for negotiating a loan was also fictitious; and it closed with a demand of judgment by the plaintiff, that the defendant should return and transfer to him the 35 shares of stock of the Sixth Avenue Railroad Company, and should pay to him any balance that might be found due to him upon the transactions between them.

The answer of the defendants Genin and A. Lockwood admitted that the order for the purchase of the shares of the Accessory Transit Company, as given to the firm of Genin & Lockwood, and the deposit with them of 35 shares as a security of the Sixth Avenue Railroad Company, and averred that by an agreement between the plaintiff and them, the Nicaragua shares were purchased and held by the firm in their own name. It averred that the purchase was in fact made, and the shares purchased so held by them, and that the subsequent sales, both of the Nicaragua and of the Sixth Avenue Railroad Company shares were authorized and ordered by the plaintiff to be made on his account, and that the account rendered to him was in all respects correct. The defendant Le Grand Lockwood answered separately, and denied all the allegations in the complaint.

What are the issues, and in our judgment the only issues, raised by these pleadings, we shall hereafter state.

It was clearly proved upon the trial, that the two hundred shares of the Nicaragua stock were purchased by the defendants at the time, and for the price mentioned in the account which they rendered, and that they advanced the funds for that purpose. That they carried the stock, by which it seems is meant

that they provided funds or credit for its payment, for the period of ninety days from the date of the purchase, and that by so doing, the credit which it was originally agreed should be allowed to the plaintiff, as the purchaser, was extended sixty days : that at the end of the ninety days they sold the stock for the price mentioned in the account, and that the plaintiff had full notice of the sale and its result. And that with this knowledge he himself ordered the sale of the 35 shares of the Sixth Avenue Railroad stock, at the price that was obtained for it; and finally, that after the account of the defendants had been rendered to him, and with the account in his hands, he, in express words, admitted that the charges which it contained were correct, with the single exception of the charge of $150, as a commission for negotiating a loan.

All the facts above stated are substantially found by the judge, but he finds these facts in addition : That on the 13th day of March, 1856, the defendants had no stock standing to their credit on the books of the Nicaragua Transit Company, but on that day and at all times from the 9th day of January to the 11th day of April, when the sale was made, they had an amount of stock equal to 200 shares deposited with other parties from whom they had borrowed money upon the security of the stock, and redeemable upon the payment of such loans, and that upon the 13th day of March the average price of the stock was $20\frac{1}{2}$ per cent.

The learned judge states the law applicable to these facts to be, that the defendants were bound to have kept in their name upon the books of the company, or to have within their power, or in their possession during the period of the agreement, the amount of 200 shares, and that the mere right to recall stock deposited as security for moneys borrowed, was not such a possession or control as the law requires. The judge also formed as conclusions of law, that the charge made by the defendants of $\frac{3}{8}$ of one per cent. for carrying the stock for the two periods of thirty days, after the expiration of the first, was justified by a usage of brokers binding on the plaintiff; and that the plaintiff was not bound by his admission that the account of the defendants was correct, except as to the charge of $150, there being no evidence that he knew at the time of the stock having been parted with. The judgment which the learned

judge finally rendered, and from which this appeal is taken, is, that the plaintiff do recover of the defendants the sum of $1832.53, being the amount of $1755, with interest from the 13th day of March, 1856, together with their costs to be adjusted.

The sum of $1755 is the difference between the market value of the 200 shares on the 13th day of March, and the sum for which, as the proceeds of their sale, the plaintiff was credited in the account rendered to him by the defendants on the 11th day of April. The judgment, therefore, manifestly proceeds upon the ground, that on the 13th day of March the stock belonged to the plaintiff, and that the defendants, by parting with its possession on that day, unlawfully converted the same to their own use, and rendered themselves liable to him as owner.

The counsel for the defendants filed sixteen exceptions to the decisions of the judges, but there are only two of these that we shall notice, as they distinctly raise the only question that we propose to consider and determine.

The first of these exceptions is to so much of the decision of the court as declares that the plaintiff was not bound by his admission that the account was correct, except as to the $150; and the second is to the whole decision, upon the ground that no action could be maintained upon the pleading for the conversion by the defendants of the Nicaragua stock to their own use; and the questions that arise upon those exceptions, in the order in which we shall consider them, are—

*First.* Whether, considering the nature of the action, and of the relief sought, it was within the power, and, indeed, the jurisdiction of the court, to order the judgment appealed from; and,

*Second.* Whether it does not appear from the evidence, that all the proceedings of the defendants in reference to the sale, both of the Nicaragua and of the railroad stock, were so fully known and sanctioned by the plaintiff, as to preclude him from disputing their legality.

And if either of these questions must be determined in favor of the defendants, it is plain that the judgment appealed from must be reversed, and a new trial be ordered. The only cause of action alleged in the complaint is, that the purchase and sale of the Nicaragua stock, as stated in the account of the defend-

ants, were pretended and fictitious, and the relief demanded is exactly that to which upon proof of these allegations the plaintiff would be entitled, namely, the return and transfer to him of the thirty-five railroad shares which he had deposited with the defendants as a collateral security. The cause of action for which the judgment was rendered is, that the plaintiff was the lawful owner of the Nicaragua shares which he had ordered to be purchased, and that the defendants unlawfully converted the same to their own use. It is impossible to say that the difference between these causes of action can be regarded as an immaterial variance, which the court was at liberty to disregard, or even as a variance which, under any possible construction of the provisions of the Code, might be cured by an amendment. It is evident that the cause of action for which the plaintiff was permitted to recover, not only differed in its entire scope and meaning from that stated in the complaint (*Code*, § 171), but directly contradicted all the allegations in the complaint upon which the demand for relief was founded. The complaint avers that the Nicaragua shares ordered by the plaintiff never were purchased by the defendants. The judge decided, and his judgment necessarily implies, that the purchase was made by them in conformity to his order. The complaint denies that any moneys were advanced by the defendants on the plaintiff's account. The judge decided, and his judgment implies, that they advanced the the whole sum which they charged as the purchase money of the stock. The complaint denies that any loans were negotiated by the defendants for the plaintiff. The judge decided that such loans were negotiated, and this also his judgment implies, since otherwise the $150 which he allowed to the defendants for negotiating such loans, would have been added to the sum for which judgment was rendered. The manifest result is, that the plaintiff was adjudged to be entitled to a sum of money that he never claimed, and to be so entitled upon grounds that in his complaint he denied to be true, and upon the trial attempted to disprove. The only issues made by the pleadings were, whether the purchase and sale of the Nicaragua stock were real or fictitious; and whether the sale of the railroad shares was made without authority. These were the only issues that the judge could rightfully try and determine. He determined them both in favor of the defendants, and yet ren-

dered a judgment for the plaintiff. We are compelled to think, and it is our duty to say, that the proceeding was anomalous and without precedent or warrant; that there is no rule of the common law, and no provision of the Code, by which it could be justified; and that the judgment so rendered is, on the very face of the record, erroneous and void.

If it be said that when an answer is interposed, the court, under section 275 of the Code, may grant to the plaintiff a relief different from that demanded by his complaint; the section itself gives the reply by declaring that the relief so granted must be " consistent with the case as made by the complaint, and embraced within the issue." As the facts upon which the court below founded its decision were proved upon the trial, it has been alleged that the court, by virtue of the powers given by section 173 of the Code, might order the pleadings, both complaint and answer, to be so amended as to conform them to the facts as proved. Whether sitting as an appellate court, we have any power to direct such an amendment is a question it is unnecessary to discuss, since it so happens that the words of the section again furnish a conclusive reply to the argument. They furnish that reply by limiting the exercise of the discretionary power of the court to cases in which the amendment does not " change substantially the claim or defence." The change that would here be made by such amendment of the pleadings as would be requisite to sustain the judgment, would not merely be substantial, but absolute and entire.

We are not aware that there are any other provisions in the Code that may possibly be thought to have a bearing upon the question we are considering. If there are any, we have been unable to discover them.

Again, even upon the supposition that the facts proved upon the trial entitled the plaintiff to a recovery of the sum for which the judgment was rendered, and that such a recovery might be had even under the pleadings as they stand, still, when it was rendered certain by the proofs that this was the only relief to which the plaintiff could be entitled, it seems to us very doubtful whether the jurisdiction of a judge sitting without a jury, in a case in which a trial by jury had not been waived in the mode provided by the Code, did not cease, so that his power to

render a judgment, unless by the express consent of the parties, was at an end. The suit in its nature, and from the frame of the complaint, was plainly an equity suit, and as such as properly triable by the court alone; and such was evidently the understanding of the counsel and the court, but the decision of the judge turned this equity suit into an action at law for the recovery of money only, which, unless by the consent of the parties, could only be tried by a jury. His decision turned it into an action to recover damages for the wrongful conversion of personal property; and unless such an action may be tried by a judge at special term, in the mere exercise of his own will, without a jury, the objection to the present judgment, as showing upon the face of the record an excess of jurisdiction, seems unanswerable. (*Code*, §§ 253, 254, 266.)

It is not, however, on this view of the case that we mean to place our decision, since we wholly reject the supposition that, even had a trial by jury been expressly waived, the judgment appealed from could have been rendered under the pleadings, and in total disregard of the issues which the pleadings raise. It is upon this ground that we hold that the judgment must be reversed, and a new trial be granted, with costs.

Placing our decision upon this ground, it is unnecessary to discuss at large the second question, namely, whether the proceedings of the defendants in relation to the stocks were not so fully sanctioned by the plaintiff as to preclude him from disputing their legality. Without dwelling upon all the reasons that have satisfied our minds that the defendants acted throughout by his express or implied authority, we shall content ourselve with showing that the learned judge certainly erred in holding that the plaintiff was not bound by his admission that the account of the defendants was correct, except as to the charge of $150. The reason which the learned judge assigns for this opinion is, that there was no evidence establishing that he knew at the time—which can only mean at the time he made the admission—of the stock having been parted with, a reason which necessarily implies, that had the knowledge of the plaintiff that the defendants had parted with the possession of the Nicaragua shares before the sale of the 8th of April, been proved to the satisfaction of the judge, he would have held that the plaintiff was bound by the sale, and the defendants entitled to

judgment. Yet, unless we are to reject entirely the testimony of the only witness examined upon this subject, and who was unimpeached and uncontradicted, nothing is more certain than that the fact that the defendants, before the sale, had parted with the possession of the stock was known to the plaintiff when he made the admissions that were proved. He knew that the defendants had borrowed money upon the pledge of the stock, and subsequently had parted with its possession. The admissions of the plaintiff, as proved by the witness, were, that there was no other error in the account rendered than the charge of $150, which he refused to admit; and that in every other respect the account was right; and the witness swore that he had before informed the plaintiff in reply to his question, what the charge of $150 was for, that it was made for negotiating loans upon the stock. The witness further stated that on the next day, the defendant A. Lockwood, in reply to the same question, what the charge of $150 was for, told the plaintiff that it was a commission at the rate of $\frac{2}{3}$ of one per cent. for negotiating loans for the extra sixty days that the stock was carried beyond the first agreement; that it was for borrowing money upon the stock for the extra time, and that this was a commission which the plaintiff, when the credit was extended, had agreed to allow. The plaintiff positively denied that he had agreed to allow the commission that was claimed, but he did not deny that he knew that loans upon the stock were made, and that when the period of credit was extended, it was understood they would be made; nor did he call in question the right of the defendants to part with the possession of the stock for the purpose of procuring them. We, therefore, think that the proof was conclusive to show, nor do we at all doubt that such was the fact, that the plaintiff when he so fully and distinctly admitted that the charges in the account of the defendants, with a single exception, were correct, possessed the very knowledge that the learned judge was of opinion, if proved, would have been fatal to his recovery. We think it was proved, and agree in the opinion that it was in law a bar to his recovery. As the plaintiff has not appealed from any part of the decision of the judge, it is unnecessary to consider the question whether the commission of $150, charged by the defendants, converted the advance they had made for the purchase of the stock into a usurious loan. But we agree

in the opinion of the learned judge, that even if the charge was improper, it would not have the effect of tainting with usury the original transaction—the agreement for the purchase of the Nicaragua stock. Whether the charge was properly made, or was sufficiently sustained by evidence upon the trial, are questions upon which we decline to express an opinion, as they may evidently arise in a new action, properly brought by the plaintiff for the recovery of the balance due to him upon the account of the defendants, as rendered. They are not questions that, in our judgment, can properly be decided in the present action.

The judgment appealed from must be reversed, and there must be a new trial, with costs to abide the event.